Julie OLDEN, Richard Hunter, and Wilbur Bleau, Plaintiffs,

v.

LAFARGE CORPORATION, Defendant.

No. 99–10176–BC.

United States District Court,
E.D. Michigan,
Northern Division.

Oct. 24, 2001.

**258**

Peter W. Macuga, II, Steven D. Liddle, David R. Dubin, Macuga & Liddle, Detroit, MI, for plaintiffs.

Steven C. Kohl, Mahesh K. Nayak, Howard & Howard, Bloomfield Hills, MI, for defendant.

### OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND GRANTING PLAINTIFFS' MOTION TO CERTIFY CLASS ACTION

LAWSON, District Judge.

This matter is before the Court on the plaintiff's motion to certify a class action and the defendant's motion to dismiss. The named plaintiffs are property owners in the City of Alpena, Michigan who claim that their real and personal property have been damaged by toxic pollutants and air contaminants emitted by the defendant during the course of its cement manufacturing operation. Specifically, the plaintiffs allege that particulate entered the air and settled on the plaintiffs' persons and their property and caused an increased risk of suffering serious injury and property damage to plants and house siding. The plaintiffs have alleged various theories for recovery and seek damages and injunctive relief. They also have moved to have their case certified as a class action. The defendant opposes class certification and has moved to dismiss the complaint. The Court finds that class certification is appropriate; the plaintiffs have not alleged a valid claim sounding in trespass although plaintiffs' other theories are viable; the Court may exercise supplemental jurisdiction over all the class members; and that abstention is inappropriate. The Court therefore will grant the plaintiffs' motion for class certification, and grant in part and deny in part defendant's motion to dismiss.

## I.

A cement plant now maintained by the defendant LaFarge Corporation has been in operation in the northeast section of the City of Alpena since about 1920. LaFarge, a Maryland corporation, has owned and operated the plant since 1987. The LaFarge plant, the largest cement plant in North America, is a major employer in the Alpena area and employs about four hundred workers. The one-square-mile facility turns limestone into cement and consists of a limestone rock quarry and a cement manufacturing plant.

The limestone rock quarry is over 100 feet deep. The manufacturing process begins when limestone rock is blasted loose from the side of the quarry and is then moved by truck to a primary and secondary crusher located in the quarry. From the secondary crusher, the crushed limestone moves by conveyor onto the secondary storage piles adjacent to the quarry. Another conveyor moves the crushed limestone to the cement kilns in the cement manufacturing facility.

The cement manufacturing facility consists of five cement kilns separated into two groups. The kilns, fired by coke fuel, fuse the crushed limestone into round nodules less than two inches in diameter called "clinker." The clinker is then cooled and stored in a storage structure about the size of two football fields. Next, the clinker moves through a grinding process reducing it to powder which is stored in silos.

A by-product of the cement manufacturing process is cement kiln dust (CKD). Some CKD is emitted into the air, causing a bad odor. In addition to covering vehicles, houses and flowers with a "white film," the CKD allegedly causes damage to vinyl siding and has killed rose bushes. The plaintiffs request injunctive relief and compensatory and exemplary damages for the loss of use and enjoyment of home and property, mental and emotional anguish, diminution of market value of their property, and injury to personal and real property.

LaFarge's operation is subject to regulation under the Clean Air Act (CAA), 42 U.S.C. § 7401, *et seq.*, by the United States

Environmental Protection Agency (EPA) and under the Natural Resources and Environmental Protection Act, Mich. Comp. L. § 324.101, *et seq.*, by the Michigan Department of Environmental Quality (MDEQ). In addition, LaFarge is subject to a Second Amended Consent Judgment entered in Alpena County, Michigan Circuit Court on September 28, 2000.

The consent judgment was entered in a state court law suit brought by the Michigan Attorney General seeking to compel compliance with the statutory air pollution control requirements applicable to the LaFarge Alpena facility. The purpose of the Second Amended Consent Judgment was to (1) settle the alleged air emission violations of Part 55 of Act 451 occurring at the LaFarge Alpena facility and cited in Letters of Violation between January 16, 1997 and July 28, 1999; (2) settle the alleged air emission violations of Section 111 of the federal CAA of 1990 occurring at the LaFarge Alpena Facility and cited in a Finding of Violation dated September 25, 1998; (3) require LaFarge to obtain and comply with the necessary air use permits for process equipment in compliance with the federal CAA, the Michigan State Implementation Plan, Part 55 of the Act 451 and rules promulgated thereunder, and/or Michigan Environmental Protection Act (MEPA); (4) collect a stipulated settlement penalty and set stipulated fines to ensure perform of the obligations set forth in this Second Amended Consent Judgment; (5) resolve all matters alleged in the Complaint and resolve any other cited violations of Permit to Install Nos. 126–86A, 158 90, and 356–88D identified in Letters of Violation issued to the LaFarge Alpena facility between January 16, 1997 and July 28, 1999; and (6) resolve any other violations which have or could have been asserted prior to entry of this Second Amended Consent Judgment relating to fugitive dust or hydrogen chloride emissions. The consent judgment recites the permits issued to LaFarge's Alpena facility, including an emissions permit for kiln groups 5 & 6, an air permit for the "Pug Mill," a raw grind permit, and a permit for the clinker conveying and storage system.

The plaintiffs allege four causes of action: trespass, nuisance, negligence/gross negligence, and a claim for court-ordered medical programs. The plaintiffs have filed a motion for class certification pursuant to Fed. R.Civ.P. 23. The defendants have filed a motion to dismiss on three grounds: lack of subject matter jurisdiction under Fed. R.Civ.P. 12(b)(1); failure to state a claim under Fed.R.Civ.P. 12(b)(6); and abstention under the *Burford* doctrine.

## II.

The defendant moves pursuant to Fed. R.Civ.P. 12(b)(1) to dismiss this case as a class action on the ground that the Court does not have subject matter jurisdiction over certain putative class members who cannot allege individual damages in excess of $75,000. A motion to dismiss under Fed. R.Civ.P. 12(b) must be granted when the complaint fails to plead a claim under "any arguable basis in law." *GTE North, Inc. v. Strand,* 209 F.3d 909, 915 (6th Cir.2000). Subject matter jurisdiction based on diversity of citizenship requires complete diversity between the plaintiffs and the defendant, and an amount in controversy in excess of $75,000. 28 U.S.C. § 1332.

The parties agree that citizenship in this case is diverse.

The amount in controversy is assessed as of the time the complaint is filed. *Rosen v. Chrysler Corp.,* 205 F.3d 918, 920–21 (6th Cir.2000). Generally, the amount claimed by the plaintiff in his or her complaint determines whether the jurisdictional amount is satisfied. *Id.* If challenged by the defendant, the complaint will only be dismissed if "it appears to a legal certainty that the plaintiff in good faith cannot claim the jurisdictional amount." *Massachusetts Cas. Ins. Co. v. Harmon,* 88 F.3d 415, 416 (6th Cir.1996).

"Legal certainty" does not mean absolute certainty, but it is more than moral certainty. *Jeffries v. Silvercup Bakers, Inc.,* 434 F.2d 310, 311–12 (7th Cir.1970)("[I]t is not incumbent upon a plaintiff to show to an absolute certainty that he will obtain a verdict in excess of [$75,000]. Instead, before a suit

will be dismissed for lack of jurisdiction, it must appear to a legal certainty that he will not recover that amount. Thus, it is sufficient if there is a probability that the value of the matter in controversy exceeds the jurisdictional amount."); *Thomas v. Travelers Ins. Co.*, 258 F.Supp. 873, 876 (E.D.La. 1966)("It might happen that the judge, on the trial or hearing of a case, would receive impressions amounting to a moral certainty that it does not really and substantially involve a dispute or controversy within the jurisdiction of the court. But upon such a personal conviction, however strong, he would not be at liberty to act, unless the facts on which the persuasion is based, when made distinctly to appear on the record, create a legal certainty of the conclusion based on them.").

■ The amount in controversy is measured by the object of the litigation. *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). In the case of injunctive relief, the amount in controversy is the "monetary value of the benefit that would flow to the plaintiff if the injunction were granted." *Smith v. GTE Corp.*, 236 F.3d 1292, 1309 (11th Cir.2001).

■ The parties agree that the named plaintiffs meet the jurisdictional amount required under 28 U.S.C. § 1332. The plaintiffs concede that not all members of the putative class have claims that exceed $75,000. Likewise, the plaintiffs and La-Farge acknowledge that aggregation of damages is not proper in the instant case. Therefore, the only issue is whether the supplemental jurisdiction statute permits the Court to retain jurisdiction even though some of the class members have claims which total less than the jurisdictional amount. Exercising supplemental jurisdiction is proper when "the federal-law claims and state-law claims in the case derive from a common nucleus of operative fact and are 'such that [the plaintiffs] would ordinarily be expected to try them all in one judicial proceeding.'" *Soliday v. Miami County, Ohio*, 55 F.3d 1158, 1165 (6th Cir.1995)(internal quotes omitted).

In 1973, the Supreme Court held that each class member in a diversity class action must meet the amount in controversy requirement. *Zahn v. Int'l Paper Co.*, 414 U.S. 291, 301, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973). In *Zahn*, a class of lake-front property owners and lessees in Vermont sought damages from International Paper Company, a New York corporation, for allegedly permitting discharges to pollute the waters of the lake and "damaging the value and utility of the surrounding properties." *Id.* at 292, 94 S.Ct. 505. Although each of the named plaintiffs satisfied the jurisdictional amount, the district court was convinced to a "legal certainty" that not every individual owner had suffered damages in excess of the jurisdictional amount. The Court noted that the jurisdictional amount requirement is "firmly rooted in prior cases dating from 1832." *Id.* at 294, 94 S.Ct. 505. The Court's decision dismissing all litigants whose claims fail to satisfy the jurisdictional amount reaffirmed the rule forbidding aggregation of claims. *Id.* at 294, 299, 94 S.Ct. 505. The decision in *Zahn* was reaffirmed by the Court in *Finley v. United States*, 490 U.S. 545, 556, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989).

Congress enacted the supplemental jurisdiction statute in 1990. Title 28 U.S.C. § 1367 provides in pertinent part:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

(b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as

plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367. The relevant legislative history indicates the view of the committee that it did "not intend[ ] to affect the jurisdictional requirements of 28 U.S.C. § 1332 in diversity-only class actions, as those requirements were interpreted prior to *Finley.*" H.R.Rep. No. 101–734, at 9 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6860, 6875.

The plaintiffs claim that the enactment of the supplemental jurisdiction statute overrules the Supreme Court's decision in *Zahn* and permits the Court to retain jurisdiction even though certain class members have claims which total less than the jurisdictional amount. The defendant argues that by enacting the supplemental jurisdiction statute, 28 U.S.C. § 1367, Congress did not intend to undo the Supreme Court's decision in *Zahn.*

■■ Congress does not have the authority to supercede a decision of the United States Supreme Court that interprets the Constitution. *Dickerson v. United States,* 530 U.S. 428, 437, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000). Congress does, however, "retain[ ] the ultimate authority to modify or set aside any judicially created rules of evidence and procedure that are not required by the Constitution." *Id.* The supplemental jurisdiction statute is a codification of the judicially-created doctrine of ancillary jurisdiction. *See Owen Equip. & Erection Co. v.*

*Kroger,* 437 U.S. 365, 376 n. 18, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). Therefore, Congress has the authority to modify or set aside the doctrine. To determine whether the enactment of the supplemental jurisdiction statute overrules the decision by the Supreme Court in *Zahn,* the court must interpret the statute.

The circuits have split on the question of whether *Zahn* survives the enactment of § 1367. Currently, four circuits have held that the supplemental jurisdiction statute applies to permit class actions when some class members do not meet the amount in controversy requirement. *Rosmer v. Pfizer Inc.,* 263 F.3d 110, 118–19 (4th Cir.2001); *Gibson v. Chrysler Corp.,* 261 F.3d 927, 939–40 (9th Cir.2001); *Stromberg Metal Works, Inc. v. Press Mech., Inc.,* 77 F.3d 928, 930–31 (7th Cir.1996); *In re Abbott Labs.,* 51 F.3d 524, 529 (5th Cir.1995). Three other circuits have held that class members not meeting the jurisdictional amount must be dismissed from the case. *Trimble v. Asarco, Inc.,* 232 F.3d 946, 962 (8th Cir.2000); *Meritcare Inc. v. St. Paul Mercury Ins. Co.,* 166 F.3d 214, 222 (3d Cir.1999); *Leonhardt v. Western Sugar Co.,* 160 F.3d 631, 641 (10th Cir.1998). The Sixth Circuit has not ruled on this question and the Supreme Court recently divided 4–4 on the issue. *Free v. Abbott Labs.,* 529 U.S. 333, 120 S.Ct. 1578, 146 L.Ed.2d 306 (2000)(per curiam). This Court, therefore, must resolve the issue in this case.

■■ The primary source for interpreting a statute is the language contained within the statute itself. *United States v. Boucha,* 236 F.3d 768, 774 (6th Cir.2001). Because it is "presume[d] that a legislature says in a statute what it means and means in a statute what it says[,] . . . Court[s] may not amend or add to the plain language of a statute." *Telespectrum, Inc. v. Public Serv. Comm'n of Kentucky,* 227 F.3d 414, 421 (6th Cir.2000). This is because the "best evidence of a statute's purpose is the statutory text adopted by both Houses of Congress and submitted to the President." *Walton v. Hammons,* 192 F.3d 590, 593 (6th Cir.1999). "[T]he statute, not the Committee Report, . . . is the authoritative expression of the law." *City of Chicago v. Envtl. Def. Fund,* 511 U.S. 328, 337, 114 S.Ct. 1588, 128 L.Ed.2d 302 (1994). If the

meaning of the statute is clear, no further inquiry in necessary. *Boucha,* 236 F.3d at 774.

▆▆▆ In this case, the House Report suggests that statute was not intended to legislatively overrule *Zahn.* However, contemporaneous legislative history is examined "only when the language of the statute is not clear." *In re Comshare Inc. Sec. Litig.,* 183 F.3d 542, 549 (6th Cir.1999). When the statute is clear, "resort to legislative history and policy considerations is improper." *In re Koenig Sporting Goods, Inc.,* 203 F.3d 986, 988 (6th Cir.2000). A statute is ambiguous if it produces two or more reasonable interpretations. Norman J. Singer, Statutes and Statutory Construction § 46:04 (6th ed.2000). *Cf. GenCorp, Inc. v. Am. Int'l Underwriters,* 178 F.3d 804, 818 (6th Cir.1999)(defining ambiguity when interpreting an insurance contract). The fact that courts disagree on whether a statute is ambiguous does not itself create ambiguity. *Moskal v. United States,* 498 U.S. 103, 108, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990).

▆▆▆ The circuit decisions which have found that *Zahn* survives the enactment of the Supplemental Jurisdiction Act are based on rules of construction which include resort to legislative history. Calling these construction tools into service is justified by a finding of ambiguity in the statutory text. A prior decision in this district employs this approach. *See Waters v. Grosfeld,* 904 F.Supp. 616 (1995). For example, in *Meritcare Inc. v. St. Paul Mercury Ins. Co.,* 166 F.3d 214 (3d Cir.1999), the Court of Appeals for the Third Circuit held that the supplemental jurisdiction statute did not overrule *Zahn* because "there is sufficient ambiguity in the statute to make resort to the legislative history appropriate." *Id.* at 222. In that case, a nursing home operator and its subsidiary food provider sued their property insurer for lost business for a period while the roof was being repaired. The nursing home operator met the jurisdictional amount, while the subsidiary did not. The Court, noting the decisions in *Abbott Laboratories, Stromberg,* and *Leonhardt,* concluded the statute was ambiguous and that reference to legislative history

was appropriate. The Court stated that alternatively,

> [e]ven were we to conclude that Section 1367 is unambiguous, as *Abbott Laboratories* read it, we would nevertheless turn to the legislative history because this is one of those "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters." *United States v. Sherman,* 150 F.3d 306, 313 (3d Cir.1998)(internal quotation marks removed, alterations in original); *see also United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290[ ] (1989)(same).

*Meritcare,* 166 F.3d at 222. After its review of the text, legislative history, and origins of § 1367, the Court determined that the supplemental jurisdiction statute still required all parties to meet the jurisdictional amount requirement.

The Court of Appeals for the Tenth Circuit held that a district court must have "original jurisdiction" over the *entire* action at the initiation of the complaint. *Leonhardt v. Western Sugar Co.,* 160 F.3d 631 (10th Cir. 1998). In *Leonhardt,* Wyoming sugar beet farmers brought a class action alleging a federal Sherman Act claim and five state law claims. The Court was concerned with "whether Congress intended to change the rules about when a plaintiff can bring an *initial* diversity-based class action under Rule 23, where the court's original jurisdiction is based on § 1332." *Id.* at 640 (emphasis in original). Although the Court found § 1367(b) irrelevant to this inquiry, it did find that the language in § 1367(b) "evidences a concern for preserving the historical and well-established rules of diversity" and its prohibition under certain rules of claims and parties which would destroy diversity "supports our interpretation of § 1367(a) as also fully respecting the rules of diversity in cases invoking the original jurisdiction of the federal courts." *Id.*

The *Leonhardt* Court stated that § 1367(a) and (b) "literally[ ] and unambiguously" requires each plaintiff in a class action diversity case to meet the jurisdictional amount. *Id.* However, acknowledging contrary decisions

in *Abbott Laboratories* and *Stromberg*, the Court "assume[d] that ambiguity in the statute permits us to examine legislative history." *Id.* The Court concluded that Congress did not intend to overrule *Zahn* and dismissed the claims by all the plaintiffs except Rodriquez Farms, who met the jurisdictional amount requirement. The Court of Appeals for the Eighth Court "agree[d] with and adopt[ed] the reasoning of the Tenth Circuit in *Leonhardt*." *Trimble v. Asarco, Inc.*, 232 F.3d 946, 962 (8th Cir.2000).

The circuits which have sustained jurisdiction for nonqualifying class members in diversity-only class actions have found it unnecessary to employ anything but the primary rule of statutory construction because no ambiguity in the statutory text has been found. The Court of Appeals for the Fifth Circuit, which was the first circuit court to address the issue, recognized that this issue had been an "open question" since the supplemental jurisdiction statute was passed. *In re Abbott Labs.*, 51 F.3d 524, 527 (5th Cir.1995). The defendants in that case allegedly conspired to fix the price of infant formula. The Court noted that it may not search legislative history unless the statute is unclear or ambiguous, and held that the statute was neither unclear nor ambiguous.

> The statute's first section vests federal courts with the power to hear supplemental claims generally, subject to limited exceptions set forth in the statute's second section. Class actions are not among the enumerated exceptions.

*Id.* at 528. Although the Court admitted that "[o]mitting the class action from the exception may have been a clerical error," the Supreme Court has held that the "statute is the sole repository of congressional intent where the statute is clear does not demand an absurd result." *Id.* at 528–29 (citing *West Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 99–100, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991)). Because overruling *Zahn* did not create an absurd result, the Court held that supplemental jurisdiction may be exercised over class members who failed to meet the amount-in-controversy requirement.

The Court of Appeals for the Seventh Circuit had previously held that the supplemental jurisdiction statute allows suit by a party who meets the jurisdictional amount but not the diversity requirement. *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176 (7th Cir.1993). Consistent with that holding, the Seventh Circuit held that the statute likewise allows suit by a co-plaintiff who satisfies the diversity requirement but not the jurisdictional amount. *Stromberg Metal Works, Inc. v. Press Mech., Inc.*, 77 F.3d 928 (7th Cir.1996). The plaintiffs sought to recover for false certification and non-payment of debts under a subcontract. *Stromberg* is a not a class action; one plaintiff's claim exceeded the jurisdictional amount but the other plaintiff's claims did not. Although the *Stromberg* Court was "reluctant to create a conflict among the circuits on a jurisdictional issue," the Court agreed with the decision in *Abbott Laboratories*, noting it had "strong support from the statutory text." *Id.* at 930. The Court quoted the exceptions to the supplemental jurisdiction statute, as recited in 28 U.S.C. § 1367(b). The Court doubted that "§ 1367(b) is a model drafting exercise" but refused to "fix the statute by inventive construction" as some scholars have suggested. *Id.* at 932.

The Court of Appeals for the Ninth Circuit refused to permit the legislative history to overcome the plain meaning of § 1367. *Gibson v. Chrysler Corp.*, 261 F.3d 927 (9th Cir.2001). In *Gibson*, automobile buyers brought a class action involving three state claims against a manufacturer regarding its method of painting cars. The *Gibson* Court disagreed with the two textual arguments supporting the *Leonhardt* Court's conclusion: (1) "original jurisdiction" does not mean something different in diversity and federal question cases and (2) the last phrase in § 1367(b) limits the reach of the exceptions stated in the rest of the subsection, stating that giving "specific meaning to the last phrase of § 1367(b) ... preserves a small slice of supplemental jurisdiction that would otherwise have been lost." *Id.* at 934–38. Finding the language clear, the Court stated that the

> legislative history therefore does not persuade us that we should refuse to follow what we believe is the clear meaning of the

text of § 1367.... If courts could ignore the plain meaning of statutory texts because their legislative histories showed that some (or even many) of those who drafted and voted for the texts did not understand what they were doing, the plain meaning of many statutes, not only § 1367, would be in jeopardy.

*Id.* at 940.

Three days after *Gibson* was decided, the Court of Appeals for the Fourth Circuit held that the "straightforward language" of the supplemental jurisdiction statute does not exempt Rule 23 from the general rule stated in section (a). *Rosmer v. Pfizer Inc.*, 263 F.3d 110, 114 (4th Cir.2001). *Rosmer* was a class action under South Carolina products liability law alleging damages against the manufacturer of the drug Trovan. The Court noted that Fed.R.Civ.P. 23 was not listed in the exceptions of section (b), and refused to "rewrite the statute to insert Rule 23 into § 1367(b)'s list of exceptions." *Id.* at 115. Although the Court "respect[ed] the views of those who take a different view of § 1367," the Court was not persuaded by the analysis of the *Leonhardt* Court; it stated that "damaging to the *Leonhardt* court is the fact that under its analysis, § 1367 would not apply to the cases such as *Finley*, the very case that prompted the enactment of the statute in the first instance." *Id.* at 117–18.

This Court finds that the text of the statute is quite clear, and therefore believes that the decisions of the courts in *Rosmer*, *Gibson*, *Stromberg*, and *Abbott Labs* are better reasoned. Section (a) of the statute confers "supplemental jurisdiction over *all* other [related] claims." 28 U.S.C. § 1367(a) (emphasis added). There is no more inclusive word than "all." Thus, if a claim is "related" to another in an action that is properly before the federal court, there is jurisdiction over that claim as well unless jurisdiction is excluded by section (b) of the statute. The "related" issue in class actions is resolved in the class certification process. If the claims of the putative class members are "common" and "typical" under Fed.R.Civ.P. 23(a), then they will likely "form part of the same case or controversy under Article III of the United States Constitution" for the purpose of 28 U.S.C. § 1367(a).

Section (b) of the statute does not carve out class actions for different treatment, although joinder of parties under other rules of procedure are excepted from the general rule established by section (a). Section (b) prohibits the exercise of supplemental jurisdiction on claims based solely on diversity of citizenship

> under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

28 U.S.C. § 1367(b). Rule 23 of the Federal Rules of Civil Procedure, which governs class actions, is not enumerated in this section. Because exercising supplemental jurisdiction over nonqualified class members is not expressly prohibited by section (b), it is therefore allowed. This becomes more apparent when one considers the maxim "the expression of one thing implies the exclusion of another thing." *Equal Employment Opportunity Comm'n v. Kimberly–Clark Corp.*, 511 F.2d 1352, 1362 (6th Cir.1975). "When Congress provides exceptions in a statute, it does not follow that courts have authority to create others. The proper inference, and the one we adopt here, is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth." *United States v. Johnson*, 529 U.S. 53, 58, 120 S.Ct. 1114, 146 L.Ed.2d 39 (2000)(holding that a court may not reduce a prisoner's term of supervised release to reflect an excess amount of time in prison because Congress only permitted an exception for terms of imprisonment less than thirty consecutive days).

This Court holds, in accordance with the decisions of the Fourth, Fifth, Seventh and Ninth Circuits, that 28 U.S.C. § 1367 confers on the Court subject matter jurisdiction over claims by putative class members which do not entail $75,000 in controversy but which form part of the same case or controversy as

the claims by other class members which exceed the jurisdictional amount. The Court will therefore deny the defendant's motion to dismiss brought under Fed.R.Civ.P. 12(b)(1).

### III.

The defendant has also moved to dismiss the complaint under Fed.R.Civ.P. 12(b)(6). In considering a motion under that rule, the allegations in the complaint must be taken as true and are viewed in the light most favorable to the non-moving party. *Miller v. Currie,* 50 F.3d 373, 377 (6th Cir.1995). The purpose of the motion is to test the legal sufficiency of the complaint, not the probability of success on the merits. *Guzowski v. Hartman,* 969 F.2d 211, 216 (6th Cir.1992); *see also Ecclesiastical Order of Ism of Am, Inc. v. Chasin,* 653 F.Supp. 1200, 1205 (E.D.Mich.1986). The Court may consider only whether the allegations contained in the complaint state a claim for which relief can be granted. *Roth Steel Prods. v. Sharon Steel Corp.,* 705 F.2d 134, 155 (6th Cir.1983). The motion is granted only if "no set of facts in support of [the plaintiffs'] claim [ ] would entitle [the plaintiffs] to relief." *Broyde v. Gotham Tower, Inc.,* 13 F.3d 994, 996 (6th Cir.1994). However, "the complaint is not to be dismissed because the plaintiff has misconceived the proper theory of the claim, if he is entitled to any relief under any theory." *Myers v. United States,* 636 F.2d 166, 169 (6th Cir.1981).

 In federal cases based on diversity jurisdiction, the Court must apply the substantive law of the state's highest court. *Hisrich v. Volvo Cars of North Am., Inc.,* 226 F.3d 445, 449 (6th Cir.2000); *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). If the state's highest court has not decided an issue, then "the federal court must ascertain the state law from 'all relevant data.' " *Garden City Osteopathic Hosp. v. HBE Corp.,* 55 F.3d 1126, 1130 (6th Cir.1995)(quoting *Bailey v. V & O Press Co.,* 770 F.2d 601, 604 (6th Cir.1985)). "Relevant data" includes the state's intermediate appellate court decisions, *id.,* as well as the state supreme court's relevant dicta, "restatements of law, law review commentaries, and the 'majority rule' among other states."

*Angelotta v. Am. Broad. Corp.,* 820 F.2d 806, 807 (6th Cir.1987).

### A.

 The complaint pleads trespass, negligence and nuisance theories. The defendant argues first that the trespass claim fails. A trespass is the "unauthorized invasion upon the private property of another." *Am. Transmission, Inc. v. Channel 7 of Detroit, Inc.,* 239 Mich.App. 695, 705, 609 N.W.2d 607, 613 (2000). The invasion must be "direct or immediate" and involve a "physical, tangible object." *Adams v. Cleveland–Cliffs Iron Co.,* 237 Mich.App. 51, 67, 602 N.W.2d 215, 222 (1999). If the invasion is "ambient dust, smoke, soot, or fumes," then the remedy sought should be nuisance. *Id.* In *Adams,* the plaintiffs brought a suit for trespass and nuisance for dust, noise, and vibrations from the defendant's mine. The dust that settled was within applicable air-quality standards but was four times more than surrounding communities. The mine operated 24 hours a day, and the noise and vibrations caused the plaintiffs shock, nervousness, and sleeplessness. The plaintiffs also alleged these conditions made their homes unmarketable. A jury returned a verdict in favor of several of the plaintiffs on the trespass count, but was unable to agree on a verdict on the nuisance claim. On appeal, the court of appeals, in this case of first impression, held that it was unnecessary to extend the law of trespass to include dust and noise because a nuisance is the proper cause of action providing recovery for those invasions. The Court remanded the case for further proceedings on the remaining nuisance claim.

 The plaintiffs in this case are alleging trespass by means of toxic pollutants and air contaminants affecting their property. "Where the possessor of land is menaced by noise, vibrations, or ambient dust, smoke, soot, or fumes, the possessory interest implicated is that of use and enjoyment, not exclusion, and the vehicle through which a plaintiff normally should seek a remedy is the doctrine of nuisance." *Id.* at 67, 602 N.W.2d at 222. This Court finds the trespass claim indistinguishable from that which the Michi-

gan Court of Appeals declared invalid in *Adams,* and therefore will dismiss the complaint insofar as it pleads trespass for failure to state a claim.

### B.

The plaintiffs have also alleged that the defendant's activity constitutes a nuisance. A public nuisance is an "unreasonable interference with a right common to the general public." *Wagner v. Regency Inn Corp.,* 186 Mich.App. 158, 163, 463 N.W.2d 450, 453 (1990)(citing 4 Restatement Torts, 2d, § 821B, p 87). "Unreasonable interference" includes:

> (1) conduct that significantly interferes with public health, safety, peace, comfort, or convenience; (2) conduct that is proscribed by law; or (3) conduct of a continuing nature that produces a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect on public rights.

*Id.* at 163, 463 N.W.2d at 453–54.

A private nuisance, in general terms, consists of an interference with the use and enjoyment of land. *Hadfield v. Oakland County Drain Comm'r,* 430 Mich. 139, 151, 422 N.W.2d 205, 211 (1988). The Michigan Supreme Court has observed that nuisance claims have addressed a variety of types of harm to landowners, leading to confusion and imprecision in defining the elements of the cause of action. *Adkins v. Thomas Solvent Co.,* 440 Mich. 293, 303, 487 N.W.2d 715, 719–20 (1992). However, "the gist of a private nuisance action is an interference with the occupation or use of land or an interference with servitudes relating to land." *Id.* at 303, 487 N.W.2d at 720.

Pollution of the air by the release of contaminants can constitute a private or public nuisance. 4 Restatement Torts, 2d, § 832, p. 142. The remedy for a public nuisance is usually abatement through an action by a government entity. A private person may pursue an action for public nuisance only if he or she can show harm that is different in kind from that suffered by the general public. *Cloverleaf Car Co. v. Phil-*

*lips Petroleum Co.,* 213 Mich.App. 186, 190, 540 N.W.2d 297, 300 (1995).

To prove a private nuisance, the plaintiff must show that (1) they have property rights that were interfered with, (2) the invasion results in significant harm, (3) the defendant's conduct was the legal cause of the invasion, and (4) the invasion was either (i) intentional and unreasonable or (ii) negligent, reckless, or ultrahazardous. *Adkins,* 440 Mich. at 304, 487 N.W.2d at 720.

The Michigan courts have recognized two other types of nuisances: nuisance *per se,* and nuisance in fact or *per accidens.* A nuisance *per se* is "an act, occupation, or structure which is a nuisance at all times and under any circumstances." *Wagner,* 186 Mich.App. at 164, 463 N.W.2d at 454. A nuisance in fact is "a nuisance by reason of circumstances and surroundings." *Id.* There are two types of nuisance in fact: negligent and intentional. A negligent nuisance in fact is "one that is created by the landowner's negligent acts, that is, a violation of some duty owed to the plaintiff which results in a nuisance." *Id.* An intentional nuisance in fact occurs

> if the creator intends to bring about the conditions which are in fact found to be a nuisance. To establish intent, the plaintiff must show that when the defendant created or continued the condition causing the nuisance, he knew or must have known that the injury was substantially certain to follow, in other words, deliberate conduct.

*Id.*

In Count III of their complaint, the plaintiffs' have alleged that the defendant's emission of toxic pollutants and air contaminants has resulted in the physical invasion of their persons and property, causing a substantial and unreasonable interference with plaintiffs' use and enjoyment of their property. Compl., ¶¶ 39, 40. There is no allegation that defendant's conduct interferes with a right common to the general public, and thus the complaint does not state a claim based on public nuisance. Nor is there any allegation which suggests that defendant's activity constitutes a nuisance *per se.* However, plaintiffs have pleaded the elements of a private

nuisance in fact; thus the motion to dismiss will be denied as to that count of the complaint.

### C.

■ To establish a claim of negligence, the plaintiffs must plead and prove that (1) the defendant owed the plaintiffs a duty, (2) the defendant breached that duty, (3) the breach caused an injury, and (4) the plaintiffs suffered damages from the breach. *Schultz v. Consumers Power Co.,* 443 Mich. 445, 449, 506 N.W.2d 175, 177 (1993). In the instant case, the plaintiffs allege that the defendant had a duty to exercise ordinary care in operating the cement plant, and that the failure of the defendant to exercise ordinary care caused the toxic pollutants and air contaminants to invade the plaintiffs' property, thereby causing damage. As noted above, the Court confines its Rule 12(b)(6) inquiry solely to the allegations in the complaint. *Roth Steel,* 705 F.2d at 155. Here, the complaint alleges that the defendant

> breached its duty to exercise ordinary care and diligence when it improperly constructed, maintained, operated, engineered, and/or designed the facility and it knew, or should have known, that such actions would cause Plaintiffs' person and property to be invaded by toxic pollutants and air contaminants, including but not limited to the emission of particulate.

Compl., ¶ 44. The complaint states a valid negligence claim.

### IV.

The defendant also requests the Court abstain from deciding this action under the so-called *Burford* doctrine because a decision may have the effect of undoing the consent judgment by "second guessing a state agency's conclusions in the state's efforts to implement a consistent and coherent state policy with regard to quality of air and emissions standards." Def.'s Reply filed Nov. 27, 2000, at 10.

■ Abstention is the exception, not the rule. *Burford* abstention is named for the case of *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), in which Sun Oil filed an action in federal court attacking the validity of a Texas Railroad Commission order granting Burford a permit to drill four wells as an exception to a minimum spacing requirement created by the Commission. Although federal jurisdiction was proper, Burford urged the federal court to abstain from exercising jurisdiction as a matter of comity in order to avoid undue interference with the state's regulation of a local industry. The Supreme Court agreed that abstention was appropriate under the circumstances, noting that Texas provided a system of judicial review and that federal court review would only lead to "[d]elay, misunderstanding of local law, and needless federal conflict with the State policy." *Id.* at 327, 63 S.Ct. 1098.

■ The defendant in this case concedes that abstention does not apply to the plaintiff's common law actions for damages. *See Nichols v. Vesta Fire Ins. Corp.,* 56 F.Supp.2d 778, 779 (E.D.Ky.1999). Abstention applies only when the relief sought is discretionary in nature. *Id.; Ada–Cascade Watch Co., Inc. v. Cascade Res. Recovery, Inc.,* 720 F.2d 897, 903 (6th Cir.1983).

■ The defendant contends that *Burford* abstention is called for here because the regulation of air emission in Michigan is delegated to the MDEQ. The purpose of *Burford* abstention is to "protect[ ] complex state administrative processes from undue federal interference." *New Orleans Public Serv., Inc. [NOPSI] v. Council of City of New Orleans,* 491 U.S. 350, 362, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989). *Burford* abstention is appropriate if (1) timely and adequate state court review is available and (2) the case involves difficult questions of state law or federal court resolution disrupts state efforts to establish a comprehensive policy. *Id.* at 361, 109 S.Ct. 2506. Adequate state review must be centralized in a forum with special competence in the particular subject matter. *Ada–Cascade,* 720 F.2d at 903. That forum in this case, the defendant contends, is the Alpena County, Michigan Circuit Court, insofar as injunctive relief is concerned, because that court oversees the consent judgment. However, the defendants have failed to offer evidence that the

Alpena County Circuit Court is a forum with "specialized knowledge."

 The district court must "weigh the federal interests in retaining jurisdiction over the dispute against the state's interests in independent action to uniformly address a matter of state concern, and ... abstain when the balance tips in favor of the latter." *Webb v. B.C. Rogers Poultry, Inc.*, 174 F.3d 697, 700 (5th Cir.1999). This balance "only rarely favors abstention." *Id.* (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996)). Abstention is not required merely because a "potential for conflict with state regulatory law or policy" exists but rather where there is "undue federal interference" with "complex state administrative processes." *NOPSI*, 491 U.S. at 362, 109 S.Ct. 2506 (internal quotes omitted). Here, the complaint alleges common law causes of action. Although any injunctive relief issued by this court has the "potential" to interfere with the consent judgment, the plaintiffs have a common law entitlement to injunctive relief if they prove the existence of a public nuisance. *Bloss v. Paris Township*, 380 Mich. 466, 473, 157 N.W.2d 260, 263 (1968). Therefore, there is no "undue federal interference." Accordingly, abstention is inappropriate in the instant case.

## V.

The plaintiffs have moved to certify as a class "all owners of single family residences in the City of Alpena whose property was invaded by toxic pollutants and contaminants which originated from Defendant's facility." Pls.' Mot. for Certification of Case as Class Action, at 1. According to Fed.R.Civ.P. 23, a matter may proceed as a class action in the name of representative parties if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims and defenses of the representative parties are typical of the claims and defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a). A class must meet all of the above prerequisites plus one of those listed in Fed.R.Civ.P. 23(b) to be

certified. *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir.1998).

The plaintiffs do not claim class certification is appropriate under Rule 23(b)(1) dealing with the preemptive effect of multiple similar lawsuits. However, class certification is also appropriate if

the party opposing the class acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Fed.R.Civ.P. 23(b)(2). The plaintiffs claim this section is satisfied because the defendant has failed to cease plant operations.

Likewise, a class action may be maintained if

the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3).

 The first prerequisite to class certification under Rule 23(a) is numerosity. There is no strict numerical test to determine when the class is large enough or too numerous to join under Federal Rules of Civil Procedure. *Bremiller v. Cleveland Psychiatric Inst.*, 195 F.R.D. 1, 19 (N.D.Ohio 2000). The Court may consider many factors, including "class size, ease of identification of members of the proposed class, geographic distribution of class members, and the ability of the class members to pursue individual actions." *Krieger v. Gast*, 197 F.R.D. 310, 314 (W.D.Mich.2000). In the

instant case, the plaintiffs have petitions signed by about 200 people interested in pursuing the class action. They also have provided population data indicating that about 11,000 people, including 3,600 property owners, reside in the City of Alpena.

 LaFarge argues that certification is not appropriate because the number of class members is unknown. However, "[t]he numerosity requirement is met when plaintiffs demonstrate that the number of potential class members is large, even if plaintiffs do not know the exact figure." *In re Consumers Power Co. Sec. Litig.*, 105 F.R.D. 583, 601 (E.D.Mich.1985). "Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Orantes–Hernandez v. Smith*, 541 F.Supp. 351, 370 (C.D.Cal.1982). Here, the plaintiffs state that the signatures on its petition are from persons living in different geographic areas of the City of Alpena. This suggests that all residents of the City of Alpena are potential class members. Based on the information now before the Court, the Court finds that the numerosity element is met.

 The second prerequisite for class certification is commonality. Commonality simply means that "there are questions of law or fact common to the class." Fed. R.Civ.P. 23(a)(2). In its response to the plaintiff's motion for class certification, LaFarge "does not dispute that this element may be, at this stage of the proceedings, deemed to be satisfied." Def.'s Resp. at 14. In the instant case, the claim arises out of a single albeit continuous action by LaFarge, namely the emission of cement dust and the damage it caused to the neighboring property owners.

The Sixth Circuit has held that the commonality and typicality requirements tend to merge. *Rutherford v. City of Cleveland*, 137 F.3d 905, 909 (6th Cir.1998). In *Rutherford*, two subclasses composed of non-minority applicants for Cleveland police patrol officer sued the City of Cleveland for racial discrimination in hiring and promoting African American police officers. The Court, quoting from *General Telephone Co. of the Southwest*

*v. Falcon*, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), noted that the commonality and typicality requirements tend to merge because "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Rutherford*, 137 F.3d at 909. Therefore, the parties' arguments, if any, will be developed further under the typicality requirement.

The third prerequisite for class certification is typicality. Typicality requires that a "sufficient relationship exist[ ] between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Stout v. Byrider*, 228 F.3d 709, 717 (6th Cir.2000). Although the named plaintiffs' claims must fairly encompass the class members' claim, they need not always involve the same facts or law. *See Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir.1998); *Senter v. General Motors Corp.*, 532 F.2d 511, 525 n. 31 (6th Cir.1976). In *Sprague*, a class brought an ERISA action against their former employer seeking basic health care coverage at no cost for a lifetime. The Court held that each claim depended on individual interaction with the defendant and because those interactions varied from person to person the proof of the plaintiff's complaint would not necessarily prove anyone else's claim.

 In the instant case, LaFarge alleges that the typicality prerequisite is not met because of the great variance in damages sought by the named class members. A claim is typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir.1996). In addition, the resolution of the common issue should advance the resolution of the litigation. *Sprague*, 133 F.3d at 397.

■ Putative class members are alleging that the defendant's plant operation was the reason for their claim for damages. The plaintiffs allege that the defendant's plant emissions, the foreseeability of damages, and the similarity of damages are common questions of fact among the putative class members. The putative class members claims may differ in the amount of damages due to each individual, but that feature alone is not fatal to a finding of typicality. In addition, the same legal theories apply to all the claims of putative class members.

■ The fourth prerequisite for class certification is the adequate representation of the class by the class representatives. "Adequate representation" requires two inquiries: (1) whether the class counsel are "qualified, experienced and generally able to conduct the litigation" and (2) whether the class members have interests that are antagonistic to the other class members. *Stout*, 228 F.3d at 717. The plaintiffs, in their motion for class certification, list the numerous class action cases in which counsel has participated. The defendant does not argue that the plaintiffs' counsel is not qualified to represent the plaintiffs in this class action lawsuit.

The defendant argues that there are antagonistic interests amongst the class representatives themselves. Based on the defendant's brief, Julianne Olden would like the burning of whatever causes the CKD to stop. Class representative Wilbur Bleau wants the burning to stop but also wants to be fairly compensated for the particular value of his house. The last class representative, Richard Hunter, is claimed to have many goals, the ultimate of which is to close the LaFarge Corporation plant in Alpena. "Antagonistic" means "mutually opposed" or "actively opposed." *Oxford English Dictionary* 501 (2d ed.1989). The interests in this case, while of varying degrees, seem to all focus in the same direction. For instance, if Mr. Hunter were successful in his efforts at closing down the LaFarge Corporation plant, this would satisfy the goals of Ms. Olden and Mr. Bleau in having the burning stopped. Likewise, Mr. Bleau's quest to receive fair compensation for the value of his home can be pursued simultaneously.

■ Defendants claim that class certification is precluded because unique defenses, such as "coming to the nuisance" and statute of limitations, are present. The mere existence of individualized defenses does not bar class certification. Class certification is appropriate as long as the defenses don't "overshadow the primary claims" by diverting the attention of the class representatives away from fairly representing the class. *Daniels v. City of New York*, 198 F.R.D. 409, 419 (S.D.N.Y.2001). If atypical defenses are merely ancillary to the main action, they may be dealt with as part of the class action. *Id.*

■ In addition to the prerequisites listed in Rule 23(a), one of the requirements in Rule 23(b) must be satisfied. Rule 23(b)(2) states that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." In the instant case, the plaintiffs have requested injunctive relief (i.e. the ending of the defendant's emissions of cement dust). The cement dust emissions at the LaFarge facility continue today. Therefore, the defendants have "refused to act," this element is met, and class certification is appropriate.

■ In addition, Rule 23(b)(3) states that the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods to the fair and efficient adjudication of the controversy.

Rule 23(b)(3) is designed "not solely as a means for assuring legal assistance in the vindication of small claims but, rather, to achieve the economies of time, effort and expense." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1084 (6th Cir.1996). The plaintiffs again assert the commonality of the claims and focus on the inefficiency and burden if class certification were not granted and all the plaintiffs filed separate lawsuits.

This "manageability" factor "encompass[es] the whole range of practical prob-

lems that may render the class action format inappropriate for a particular suit." *Andrews v. Am. Tel. & Tel. Co.*, 95 F.3d 1014, 1023 (11th Cir.1996)(internal quotations omitted). The problems may include cases which "break[ ] down into an unmanageable variety of individual legal and factual issues." *Id.* The defendant argues that is the case here. However, it appears the legal issues are common to all defendants. The individual factual questions are how much money, if any, is each plaintiff entitled to assuming liability is established; this will change with the length of time they lived in Alpena and the damages they suffered during that time. The Court can bifurcate the issue of liability from the issue of damages. *See Little Caesar Enters., Inc. v. Smith,* 172 F.R.D. 236, 267 (E.D.Mich. 1997). Once liability is found, the issue of damages can be decided by a special master or by another method. *Id.*

The Court finds, therefore, that the prerequisites for class certification have been met and the matter shall be certified as a class action under Fed.R.Civ.P. 23(b)(2) and (3). The class is defined as all owners of single family residences in the City of Alpena whose persons or property was damaged by toxic pollutants and contaminants which originated from the LaFarge cement manufacturing facility located in Alpena, Michigan.

## VI.

The Court finds that it has jurisdiction over the named plaintiffs and the putative class members. The Court also finds that the complaint fails to state a claim for which relief can be granted under a trespass theory, however, the complaint does state a valid claim on the basis of private nuisance in fact and negligence. Furthermore, it is not appropriate for the Court to abstain from exercising its jurisdiction in this matter.

Accordingly, it is **ORDERED** that the plaintiffs' motion to certify class action [dkt # 33] is **GRANTED**. The determination of class certification is conditional and may be altered or amended prior to the decision on the merits in light of any changes in circumstances that make such action advisable. *See* Fed.R.Civ.P. 23(c)(1).

It is further **ORDERED** that defendant's motion to dismiss [dkt # 36] is **GRANTED** as to the trespass theory (count II). Otherwise, the defendant's motion is **DENIED.**

It is further **ORDERED** that a status conference is scheduled for **Thursday, November 15, 2001 at 9:00 a.m.** at the U.S. Courthouse in Bay City, Michigan. The parties shall be prepared to discuss the notice requirement under Fed.R.Civ.P. 23(c)(2).